THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JOHN FARINI, Defendant.

Supreme Court, Kings Special Term, April 20, 1925.

**Crimes — new trial — newly-discovered evidence — recantation by witness of evidence on trial insufficient to sustain motion for new trial under Code Crim. Proc. § 465, subd. 7 — affidavits of detective, containing recital of alleged interviews with witnesses testifying on trial as to identification of defendant, are hearsay and worthless as newly-discovered evidence as to form and substance — failure of defendant to call his brother as witness on trial does not warrant consideration of his affidavit as newly-discovered evidence.**

Defendant, convicted of murder in the first degree, which conviction has been affirmed by the Court of Appeals, is not entitled to a new trial upon the ground of newly-discovered evidence, where a paper purporting to be signed by a witness upon the trial and containing a recantation of his evidence thereon, aside from being defective within the provisions of subdivision 7 of section 465 of the Code of Criminal Procedure, in that it fails to show by affidavit that the testimony previously given was false, and that the witness is available for examination by the court, contains nothing which would connect the recantation with the scene of the murder.

Furthermore, the affidavits of a detective, containing a recital of interviews with witnesses testifying on the trial as to the identification of the defendant, are hearsay, and worthless as newly-discovered evidence, both as to form and substance.

Moreover, the affidavit of defendant's brother ·cannot be considered as newly-discovered evidence where it appears that though during the trial he was confined by the prosecution as a material witness, he was, nevertheless, available to the defendant as a witness and that both the defendant and his attorney knew of his existence and the facts to which he would testify, nor was ordinary diligence used to produce him as a witness.

MOTION for new trial on ground of newly-discovered evidence.

*Henry J. Walsh, Assistant District Attorney* [*Charles J. Dodd, District Attorney*], for the plaintiff.

*Edward J. Reilly,* for the defendant.

CARSWELL, J.:

This is a motion under section 465, subdivision 7, of the Code of Criminal Procedure for a new trial upon the ground of newly-discovered evidence.

The defendant has been convicted of murder in the first degree, sentenced and his conviction affirmed by the Court of Appeals. (239 N. Y. 411.) This motion is addressed to the sound discretion of the court and may only be granted where it is made to appear by *affidavit* that upon another trial the defendant can produce evidence which, if it had been adduced at the previous trial would have

probably changed the verdict.   Further prerequisites are that such evidence shall have been discovered since the trial; be not cumulative and the failure to produce it on the trial must not be due to want of diligence.

The decision of this motion, by reason of its having been made *after* the conviction has been affirmed by the Court of Appeals, is not appealable by the defendant or the People.   (*People* v. *Trezza,* 128 N. Y. 529; *People* v. *Mayhew,* 151 id. 607; *People* v. *Beckwith,* 42 Hun, 366; *People* v. *Priori,* 163 N. Y. 99.)   This has made it imperatively necessary that the court meticulously discharge its duty.

I heard most of the evidence in this case while presiding at the second Pantano trial which involved the same episodes that the defendant is convicted of having been concerned with, in whole or in part.   To supplement this, I have read the record on appeal on this trial.   I have also read everything presented by the defendant as a basis for his application on this motion.   I have examined the citations submitted by the defendant and the People.   With this background, I will take up seriatim the grounds advanced by the defendant as reasons for the granting of a new trial.

The principles governing an application of this kind are stated in *People* v. *Shilitano* (218 N. Y. 161, 169; 215 id. 715).   It is there decided that the mere fact of recantation by a witness called by the People does not necessarily entitle a defendant to a new trial.   Such a recantation may only be made the basis for the granting of a new trial when the court is satisfied that the motives actuating the recantation are not subversive of the proper administration of justice.   The best means of determining this is an oral examination to determine whether the testimony given at the trial was with or without any motive to falsify or whether the recanting statements were or were not prompted by corrupt or unworthy motives, or as part of a conspiracy to defeat the ends of justice.   It is further recognized that while such recanting statements are popularly regarded as important, those experienced in the administration of criminal law know that such recanting testimony is ordinarily of an untrustworthy character and that no class of proof is so unreliable as recanting testimony.   The court observes that it should be borne in mind that witnesses to crimes of violence " are often of a low and degraded character and that after they have given their testimony they are sometimes influenced by bribery and other improper considerations."   The value which attaches to a recantation is determined by a comparison of the respective motives back of the original testimony and the recantation.

(1) With these considerations in mind, the first ground advanced

is that one Nicholas Luciano has recanted the testimony given on the trial. A paper is submitted purporting to be signed by him before a commissioner of deeds. There is no venue and it is not entitled in any action. The paper, therefore, does not comply with the requirement of subdivision 7, section 465 of the Code of Criminal Procedure, which is that it must be made to appear by *affidavit* (as construed by the court) of the person recanting, that the testimony previously given was false and further it should appear that such person is available for examination by the court for the purpose of determining the motives actuating the recantation of the original testimony, that is as to which of the conflicting stories was motivated by conscience, corruption or conspiracy to defeat the ends of justice. Luciano is not made available to the court for the purpose of determining this fact. Whether his unavailability is voluntary or involuntary it is a circumstance that weighs heavily upon the accepting as true the alleged recantation proffered. This is all on the assumption that the paper actually was signed by him. This is especially so when it appears that he has testified to the same story on four separate trials; has made deposition of a like character in a fifth trial and a like formal statement on a sixth occasion to the district attorney. It is the story told on these six occasions that the proffered paper purports in part to recant. The foregoing alone necessitates eliminating the purported Luciano recantation. Let us look further. An examination of his testimony on this trial shows that he kept the degree of implication of this particular defendant at a minimum in his story and testified that at the Williamsbridge conference this defendant never uttered a word, in the colloquy between others present on that occasion. It also appears in the testimony that he was an associate since boyhood of the defendant. It further appears that on this trial it was made the law of the case that if the jury did not find that Farini was the man who ran down the stairs from the scene of the crime, they must acquit him. The finding of the jury is that he is the man. This made unimportant whether he was at the Williamsbridge conference or not. Therefore, Luciano's alleged recantation, not being concerned with the scene of the murder, can be given no effect on this motion. Moreover, the defendant's participation in other phases of the transactions that culminated in the murder was established on the trial by other witnesses, particularly Sacks, Fried and Young.

(2) This necessitates considering the next ground advanced, that the witness Young has made statements that indicate his testimony given at the trial was not to be relied upon. Young is the man who testified the defendant ran down the stairs and entered

the waiting automobile. The only way this phase is brought before the court is in the form of an affidavit of a detective, one Drummond. His hearsay affidavit does not comply with the requirements of the statute. The affidavit needful to move the court must be that of the witness whose testimony is claimed to be newly discovered. I have passed over that fatal defect and examined into the merits. I visited the scene of the murder on a cloudy overcast day. The testimony Young gave is not incredible or unbelievable. Close scrutiny of his testimony given on the trial shows him to be a careful and conscientious witness and he frankly conceded that he might be mistaken, but that he himself had no doubt as to the accuracy of his identification. The issue of the alleged resemblance of De Saro and Farini was sharply litigated at the trial and that issue may not be again litigated, when there is no testimony adduced in proper form to show that any newly-discovered element is existent. Moreover, the story Young told on this trial was told on four other trials and is substantially the same on all these occasions despite vigorous cross-examination by different defendants' resourceful counsel. It also appears that one Butler subjected Young, before the trial herein, to the kind of " interview " that Drummond has since subjected him to and it appears that the report of said Butler, containing material which is claimed to indicate doubt on the part of Young as to his own story, was in the hands of defendant's counsel on the trial. This is apparent from the references to Butler in the cross-examination of Young, so that the claim that the element of doubt entertained by Young of his own identification, as being newly discovered is not true in fact, in that defendant's then counsel knew of this claimed element at the time he had Young under cross-examination. Even if he did not, he subjected him to a cross-examination which evidenced knowledge of the theory that Young had doubted his own identification on a prior occasion, to wit, in another trial. This claim of doubt, however, did not take on the form that defendant claims it did. Furthermore, the letter submitted on the argument by the district attorney, in which Young makes a blanket denial of having talked to Drummond along the lines that Drummond claims, need not be considered except as indicating that the trend Drummond gives·to the claimed conversation is denied by Young.

(3) The claim of newly-discovered evidence in connection with the testimony of two other witnesses, Ida Berg and one Samuel Klein, not being by their own affidavits, but through a Drummond recital of alleged hearsay, makes it unavailable on this motion for the reason stated with respect to Young. Disregarding that, however, it appears that what is claimed with reference to them

is not in fact newly-discovered evidence. Both these witnesses *were called by the defendant on the trial* and under the rule of due diligence their entire stories are deemed to have been known to and available then to the defendant. This makes them unavailable as affiants of " newly-discovered evidence." Moreover, an examination of the testimony of Ida Berg shows that she observed a man standing at the Fifty-fifth street stairs, but did not take any notice of him and that she did not see anybody running down to the automobile. This precludes giving any value to any claim that she now states that Farini is not the man, because on her own story she did not know who the man was who was there, either because she did not see him, or because she paid no attention to the man she saw standing there and who was not running. Moreover, it appears that this same Butler " interviewed " her so that her story was available in the exercise of ordinary diligence for the trial. With respect to Klein the claim that he has stated to Drummond that the man who ran down the Fifty-fifth street stairs was not Farini is not newly-discovered evidence, because he stated on the trial that he had never seen Farini before the trial; therefore, it was before that jury that Klein did not identify him as the man who came down the Fifty-fifth street stairs.

So it appears that the material in the Drummond affidavits respecting Young, Berg and Klein is worthless as newly-discovered evidence on this motion, both as a matter of form and as a matter of substance. I have gone into the substance, however, in order that no injustice might result from adherence to and insistence upon proper forms of practice and procedure.

(4) There is but one affidavit submitted here that complies with proper practice. It is that of Angelo Farini. He is a brother of the defendant. It is claimed that he could have testified to what transpired at Williamsbridge in a manner that would have been exculpatory of the defendant. His testimony in that regard would be of no avail for the reason given in connection with Luciano's testimony, growing out of what was made the law of the case, to wit, the requirement of a finding of fact by the jury that the man who ran down the Fifty-fifth street stairs is the defendant, and if he is not that there must be an acquittal. This made the Williamsbridge incident unimportant. An added reason, however, is that Angelo's existence and knowledge was known to the defendant and to the defendant's lawyer. The claim that he was not available to the defendant because he was kept in confinement in a place unknown, as a material witness does not lessen the effect of this fact. The defendant and his counsel knew how to get him if they wanted him. A single word to the presiding judge would have

produced him. The fact that they did not get him shows they did not want him. Therefore, their willful refraining from using him as a witness shows that the rule of ordinary diligence with respect to him has not been met so as to entitle his affidavit to be considered as newly-discovered evidence within the well-settled rules. That is all that need be said in detail.

I have laboriously gone over the vast amount of material submitted. It leaves me with this impression, that the moving papers herein, viewed from the ordinary standards applicable to alleged newly-discovered evidence, is a mass of typewritten trash. Not a single substantial item of evidence is advanced to warrant the court exercising its discretion in granting a new trial. The delay in making the application and the absence of the alleged recanting witness involves the application in an atmosphere of distrust and gives the abiding conviction that his absence and alleged recantation are due not to the promptings of consicence, as is claimed, but to corrupting influences and a conspiracy to attempt to defeat the ends of justice. The defendant was found guilty upon a trial where in substance and in fact everything urged upon this application was vigorously advanced on behalf of the defendant by competent counsel and the jury has resolved the questions of fact on evidence that amply supports their conclusion. To grant a new trial in the face of this would be to make under the forms of law a hollow mockery of the administration of justice. So far as it is humanly possible to determine, the defendant has been properly convicted. This conclusion, having been arrived at, with every desire to accord the defendant all that he might properly have given to him under the law, requires that this motion be denied. I so decide without any misgivings. Submit order.