# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2024-2832
LT Case No. 2023-DR-001955

_____

JOSE FRANCISCO CUEVAS
MARTINEZ,

     Appellant,

     v.

IRIS MARINA CUEVAS,

     Appellee.

_____

On appeal from the Circuit Court for Seminole County.
Sylvia A. Grunor, Judge.

Samuel Alexander, Michael Ellis, and Bradley M. Beall, of the
Alexander Appellate Law, P.A., Jacksonville, for Appellant.

No Appearance for Appellee.

July 3, 2025

PER CURIAM.

     This is an appeal of one aspect of a final dissolution judgment,
in which the court denied a request by Appellant ("Husband") to
disestablish his paternity over two children who were born during
his marriage to Appellee ("Wife"). Because the court's reasoning
for the denial is flawed, we reverse and remand for further
proceedings.

## I.

Husband and Wife married in 2005. Wife gave birth to three children during the marriage: MMC (born in 2008), AMC (2010), and JMC (2015). Husband underwent a vasectomy in 2012 or 2013. According to Husband, he did not return to his doctor to confirm that the procedure was successful. When he learned that Wife was pregnant with JMC, he wondered if the child was his. But Wife assured him that a vasectomy was not an ironclad procedure and that she believed JMC was their child.

After dissolution proceedings began, Husband conducted an at-home DNA test of JMC. The test indicated that JMC was not his child. This prompted him to have all three children undergo professional DNA testing. Those results revealed that Husband was not the father of JMC or MMC.

With Wife's agreement, the court allowed Husband to amend his dissolution petition. The petition alleged the emergence of newly discovered paternity evidence, and it attached the DNA test results for all three children. Citing this evidence, Husband argued that he was not obligated to pay child support for JMC or MMC. Wife's answer conceded there was newly discovered evidence about paternity. Her amended counterpetition also stated that AMC was the only child common to the parties.

After a trial, the court entered a final dissolution judgment, which denied Husband's request to disestablish paternity. The court reasoned that Husband, "having had a medical procedure to prohibit parentage knew or should have known of the likelihood of parentage." It ordered Husband to pay child support for all three children and to provide them with health and dental insurance. Husband moved for rehearing. He maintained that he satisfied all the elements to disestablish his paternity of JMC and MMC. The court denied his motion in a boilerplate order.

## II.

We review the trial court's interpretation of the relevant statute de novo. *See Dep't of Rev. v. M.J.M.*, 217 So. 3d 1148, 1152 (Fla. 2d DCA 2017). Under certain circumstances, "a male may

disestablish paternity or terminate a child support obligation" when he "is not the biological father of the child." § 742.18(1), Fla. Stat. (2006). To do so, he must file a petition that includes: (a) an affidavit alleging that newly discovered evidence relating to the paternity of the child has come to his knowledge since the initial paternity determination, (b) scientific tests that are generally acceptable within the scientific community and were performed within 90 days before filing the petition show that he "cannot be the father of the child," and (c) an affidavit alleging that he is current on child support. *Id.*

Husband complied with these requirements. When that is the case, the court "shall grant relief" upon making certain findings. *Id.* § 742.18(2). They are: (a) newly discovered evidence regarding paternity came to the male's knowledge since the initial paternity determination, (b) the scientific testing was properly conducted, (c) the male is current on child support, (d) the male has not adopted the child, (e) the child was not conceived by artificial insemination while the male and the child's mother were married, (f) the male did not try to prevent the child's biological father from asserting his paternal rights, and (g) the child was younger than 18 when the male filed his petition. *Id.*\*

Here, the dissolution judgment does not expressly address these findings. Instead, it implies that Husband's claim failed on the first one. In essence, the court reasoned that because Husband had a vasectomy, the DNA test results could not be newly discovered evidence regarding his paternity (or lack thereof).

This reasoning has two defects. First, even if Husband's 2012 or 2013 vasectomy foreclosed relief as to JMC—who was born in 2015—it is obviously irrelevant for MMC—who was born in 2008. Second, regardless of the vasectomy, Husband still made a showing of newly discovered evidence.

---

\* Certain conduct precludes relief even if the court makes all these findings, such as when the male acknowledged his paternity in a sworn statement that he made after learning that he is not the child's biological father. *See* § 742.18(3), Fla. Stat.

3

Courts are split over whether the scientific testing in section 742.18 is itself "newly discovered evidence" under the statute. *Compare Hooks v. Quaintance*, 71 So. 3d 908, 911 (Fla. 1st DCA 2011) (interpreting the need for newly discovered evidence as distinct from the testing requirement), *with M.J.M.*, 217 So. 3d at 1154 (holding that test results "are new evidence"), *and P.G. v. E.W.*, 75 So. 3d 777, 782 (Fla. 2d DCA 2011) (concluding that "DNA test results performed since the initial determination of paternity" are newly discovered evidence if they meet the statute's other time requirements). Under the second category, the scientific testing performed on all three children qualifies as newly discovered evidence. Therefore, any earlier doubts that Husband had about his paternity of JMC are irrelevant. *See M.J.M.*, 217 So. 3d at 1153 (holding that the relevant inquiry is whether new evidence has come to the petitioner's knowledge since the initial paternity determination); *P.G.*, 75 So. 3d at 782 (reasoning that "any suspicions" the petitioner "may have had prior to that initial establishment of paternity are irrelevant").

But even under the view of the statute set forth in *Hooks*, the result would not change. In *Hooks*, the mother told the petitioner that "there was no more than a fifty percent chance that he was the child's biological father." 71 So. 3d at 909. Undaunted by this disclaimer, he married the mother and voluntarily acknowledged his paternity. *Id.* When the parties later divorced, DNA testing showed that he was not the child's father. *Id.* at 910. The First District held that since he chose not to "exercise due diligence to discover whether he was the biological father" before marrying the mother and acknowledging paternity, "the trial court correctly found that [his] current DNA test results were not newly discovered evidence." *Id.* at 911–12.

The case before us is materially different. *See Sheridan v. Rennhack*, 200 So. 3d 255, 259 (Fla. 1st DCA 2016) (explaining that the "petitioner in *Hooks* obtained his DNA results based on nothing 'newly discovered'" since he knew "from the outset" that his paternity was dubious, yet despite this knowledge, "voluntarily added his name to the child's birth certificate, married the mother after the birth of the child, and supported the child as his dependent for years, even after the marriage to the mother was dissolved"). Here, unlike the eyes wide open scenario described in

4

*Hooks*, Wife assured Husband that JMC was their child. Moreover, Husband satisfied *Hooks'* demand for newly discovered evidence that is distinct from the scientific testing described in the statute. *See* 71 So. 3d at 911. He conducted an at-home test of JMC, the results of which caused him to secure professional testing of all three children. In turn, those results led to Wife conceding that he did not father JMC or MMC. Accordingly, under either view of the statute, the court should not have denied Husband's claim based on his vasectomy.

## III.

Husband met the requirements of section 742.18(1). As such, the court needed to complete the analysis in section 742.18(2). The face of the judgment shows the court did not finish that task. Instead, it denied Husband's claim based on the first element—his purported failure to show newly discovered evidence—which it based entirely on his vasectomy. That conclusion was factually— as to MMC—and legally—as to MMC and JMC—incorrect. Because the court did not evaluate the other elements for relief, we reverse and remand for the court to finish that analysis. *See Johnston v. Johnston*, 979 So. 2d 337, 339 (Fla. 1st DCA 2008). If the court finds that Husband satisfied all the elements for disestablishing paternity, then it must grant relief. *See L.G. v. Dep't of Child. & Fams.*, 227 So. 3d 653, 654 (Fla. 4th DCA 2017). Relief would include all necessary revisions to the dissolution judgment. *See Shultz v. Shultz*, 110 So. 3d 914, 915 (Fla. 1st DCA 2012).

REVERSED and REMANDED.

JAY, C.J., and LAMBERT and HARRIS, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————